ever, two sufficient answers to this suggestion: First, that the allega-tion of the relator that he was a regular clerk is denied by the return, which, under the rule governing mandamus proceedings, must control; and, secondly, the provisions of law relating to regular clerks do not aid the relator. There are two provisions of law limiting the power of re-moval, one of which, relating to the municipal civil service, is section 1543 of the Greater New York charter (chapter 378, p. 541, Laws 1897, as amended by chapter 466, p. 636, Laws 1901), and the other is chapter 697, p. 1694, Laws 1904, which has reference to the state civil service. The first provides, "But no regular clerk or head of a bureau or person holding a position in the classified municipal service subject to competi-tive examination shall be removed until he has been allowed an oppor-tunity of making an explanation"; and the second limits the power of removal in the case of honorably discharged sailors, soldiers, and others classified in the act, in none of which classes is it claimed that the re-lator is included.

The only remaining contention of the relator which needs considera-tion is that attacking the power of the state commissioners, with the approval of the Governor, to change the relator's position from the competitive to a noncompetitive class. There are two sufficient answers to this contention; the first being that the case of People ex rel. Sims v. Collier, 175 N. Y. 196, 67 N. E. 309, is authority for the proposition that the commissioners' act in making such rating was quasi judicial, and cannot be reviewed collaterally by mandamus. And the second is found in the recent case of People ex rel. Letts v. Collier, 78 App. Div. 620, 79 N. Y. Supp. 671, wherein the position in dispute was simi-lar to, if not the same as, the one held by the relator; and therein it was held that such a position is confidential, and therefore exempt from competitive examination, and doubt was expressed as to the power of the Civil Service Commission, even if it sought to do so, to change the actual status of such a position, and place it in the competitive class. The action of the Civil Service Commissioners in placing the relator's position in the noncompetitive class is supported by the reasoning of that case, apart from the fact that by formal rule they have actually so classi-fied it.

Our conclusion, therefore, is that the order appealed from should be affirmed, with costs.

VAN BRUNT, P. J., and HATCH and LAUGHLIN, JJ., concur. PATTERSON, J., concurs in result.

---

(97 App. Div. 483.)

### LOCKE v. CITY OF BUFFALO et al.

(Supreme Court, Appellate Division, Fourth Department. October 21, 1904.)

1. MUNICIPAL CORPORATIONS—PARK COMMISSIONERS—POWERS—APPLICATION OF CITY MONEYS.

Laws 1897, p. 735, c. 455, authorized the park commissioners of Buf-falo to take possession of and embellish a certain square therein, and granted it all the power possessed by the common council in respect to the same, and all the power which the park commissioners possessed

over the parks of the city and their approaches. The park commissioners also had specific power to designate the places in the square where trenches should be dug for sewers and water mains and to cause connections to be made from sewers and water mains to the sidewalks. No sewers or mains could be laid within the square without its permission. While the charter of the city provided that the department of public works should have charge and control of water mains and sewers, there was nothing in the charter to indicate whether the expense of constructing or repairing sewers within the parks should be provided for by an appropriation to the park department or to the department of public works. The city made an appropriation to the park department for the specific purpose of improving the square in question, and, in order to carry out its proposed scheme of improvement, it was necessary that certain sewers and water mains passing through the square should be diverted around a monument erected therein, and that one of such sewers passing under the monument should be re-enforced. *Held*, that the park commissioners could make use of the fund appropriated to it for the improvement of the square for the purpose of diverting and re-enforcing the sewers, and such use would not violate the provision of the city charter forbidding the application of money borrowed or raised by the city to any purpose other than that for which it was borrowed or raised.

2. SAME—PERFORMANCE OF WORK.

The park department of the city of Buffalo may delegate the actual performance of the work of re-enforcing and diverting sewers passing through a public square to the department of public works of said city.

3. SAME—PUBLIC IMPROVEMENTS—PLACE OF ERECTION—INTERFERENCE BY COURT.

Where the Legislature, with the consent of a city, has provided for the erection of a monument in a certain square, the court cannot interfere on the ground that that square is not the proper place for the monument.

Appeal from Special Term.

Action by Franklin D. Locke against the city of Buffalo and others. From a judgment dismissing the complaint, plaintiff appeals. Affirmed on opinion of the court below.

The following is the opinion of KENEFICK, J., delivered at Special Term:

Niagara Square is a plot of land 462 feet square in the business section of the city. It was laid out as a public square in the original mapping out of the city, and has always been maintained as such. The approaches to the square are four public streets, namely, Court street, Delaware avenue, Niagara street, and Genesee street. By chapter 455, p. 735, of the Laws of 1897, the board of park commissioners of the city were "authorized to take possession of, to govern, manage and erect and to improve and embellish" the square, and were granted "all the power and authority now by law conferred on or possessed by the common council of said city in respect to the same, and all the power which the said board of park commissioners now possess over the parks of the city and the approaches thereto." Under the power thus conferred the park commissioners took possession of the square, and have since governed and managed it. After the enactment of the law above referred to, the city made an appropriation to the park department of $25,000 for the specific purpose of improving this square, and no part of this sum has yet been expended. By chapter 536, p. 1279, of the Laws of 1902, the Governor was authorized to appoint a commission of five persons, and the commission thus appointed was authorized to procure the erection of a monument on this square to our late President, William McKinley, provided the site should be deeded by the city to the state, and the sum of $100,000 was appropriated by the state to carry out the provisions of the act. The Governor has appointed the commission provided for in the act, and the

commission is now engaged in performing the work intrusted to it. The
city has conveyed to the state a circular parcel of land located in the center
of said square, within the circumference of a circle whose diameter is ninety-
six feet, upon which to erect the monument. Certain city sewers and water
mains cross the monument site. In connection with the work of constructing
the monument by the commission the park commissioners have adopted a
plan for the improvement of the remainder of the square lying within their
jurisdiction. Recognizing that the monument will be the chief ornament of
the square, the general scheme of improvement planned by the park com-
missioners is to harmonize the surroundings so as to set off the monument
to the greatest advantage. The plan of improvement involves, first, the re-
enforcement of the Genesee street sewer within the monument circle, and
the diversion of the other sewers and water mains which cross the circle so
that they will run around the circle and in that part of the square still under
the control of the park department; second, the paving of a circular space
fifty-five feet wide around the monument circle for a walk; third, the plant-
ing of trees and shrubbery encircling the paved space; and, fourth, outside
of the trees and shrubbery a paved roadway for vehicle traffic. The esti-
mated expense of the improvement is $28,870.07, of which $7,900 is for re-
enforcing the Genesee street sewer and diverting the other sewers and water
mains, and $20,250.07 for paving, curbing, and receivers, and the balance of
$720 for engineering and inspection. The park department purposes using
the fund of $25,000 above mentioned in doing this work, and have practically
delegated the actual performance of the work to the department of public
works.

This action challenges the right of the park department to devote any part
of the fund of $25,000 appropriated for the improvement of the square to the
work of re-enforcing the Genesee street sewer and diverting the other sewers
and water mains as above stated, and also challenges the right of the park
department to delegate the department of public works to perform the work.
It is urged that the work on the sewers and water mains above referred to
cannot be properly classed as an improvement of the park lands lying within
the square, and that no part of the fund appropriated for the improvement
of the square can be devoted to such work, as it would be in violation of sec-
tion 486 of the city charter, which provides that, "When the city shall borrow
or raise money for any particular purpose it shall be applied only to that
purpose." It must be conceded that the balance of the work provided for,
namely, the paving, comes properly within the jurisdiction of the park de-
partment, and that the expense thereof can be met out of this fund, because
it is an improvement of the square. It must be conceded also that the work
on the sewers and water mains is necessary so as to prevent the Genesee
street sewer from giving way under the weight of the monument and its
foundation, and so as to arrange the other sewers and water mains so that
in the future it will not be necessary to go upon the monument circle to make
repairs or connections. So that the claim of the plaintiff in this respect
narrows itself down to the proposition that this work, although necessary
and proper, cannot be paid for out of a fund appropriated for the improve-
ment of the square. I am of the opinion that this work is a necessary inci-
dent of the improvement of the square contemplated by the park department,
and can be paid for from this fund. The park department is given specific
power to designate the places in the square where trenches shall be dug for
sewers and water mains, and no sewers or water mains can be laid within
the square without its permission. That department is also given specific
power to cause connections to be made from sewers and water mains to the
sidewalk border. There is nothing in the charter to indicate whether the
expense of constructing or repairing sewers within the parks shall be pro-
vided for by an appropriation to the park department or an appropriation
to the department of public works. It is true that the charter provides that
the department of public works shall have charge and control of water mains
and of the constructing and maintaining of public sewers, but there is no
necessary implication that the appropriation for such works within the parks
shall be made to the department of public works rather than to the depart-
ment of parks. The power given to the park department over this square by

express statute is so comprehensive that I have little doubt that it is within the power of the park department to devote a portion of this fund to the doing of the work planned in relation to these sewers and water mains. Kittinger v. The City of Buffalo, 148 N. Y. 332, 42 N. E. 803.

The proposition that the park department cannot delegate the actual performance of this work to the department of public works is without force. Section 317 of the charter implies that the park department may confer such authority upon the department of public works. This precise question as to the delegation of a duty by one department of the city to another was considered in the case of The Metropolitan Exhibition Company v. John Newton (Sup.) 4 N. Y. Supp. 593. There the department of public parks were authorized to remove obstructions from territory within the jurisdiction of the park commissioners, and they employed the commissioner of public works to perform the duty. The court said that they had the right to choose any agent they saw fit, and that the mere fact that the commissioner of public works was an officer of the city, having facilities for carrying out the direction of the park department, in no way detracted from the efficiency of the agency.

The only other question suggested in this case is that the improvement contemplated by the park commissioners involves the discontinuance of the city streets above referred to. There is nothing in this case to indicate that these streets ever crossed the square. Indeed, I believe the fact is that the square was laid out as such in the original mapping out of the city. These streets enter the square upon one side and reappear on the same lines on the other side of the square. The plan of improvement simply diverts the traffic within the square, and provides ample space for vehicles and pedestrians.

The suggestion that Niagara Square is not the proper place for the monument cannot, of course, be considered. The Legislature has decreed that it shall be located there with the consent of the city, and the city has consented. With such action the court has no concern.

Judgment may be entered dismissing the complaint.

Argued before McLENNAN, P. J., and SPRING, WILLIAMS, HISCOCK, and STOVER, JJ.

William H. Cuddeback, for appellant.
Charles L. Feldman, for respondent.

PER CURIAM. Judgment and order affirmed, with costs, on opinion of KENEFICK, J., delivered at Special Term.

(98 App. Div. 376)

### CRAPO v. CITY OF SYRACUSE.

(Supreme Court, Appellate Division, Fourth Department. November 15, 1904.)

1. MUNICIPAL CORPORATIONS—LIABILITY FOR WRONGFUL DEATH—"PERSONAL INJURIES" INCLUDING INJURIES RESULTING IN DEATH.

The words "personal injuries," as used in Laws 1886, p. 801, c. 572, limiting the time for bringing certain actions against a city of 50,000 inhabitants or over include injuries resulting in death, and apply to actions brought by an executor or administrator as authorized by Code Civ. Proc. § 1902.

2. SAME—LIMITATION OF ACTIONS—COMPUTATION OF TIME.

Code. Civ. Proc. § 1902, gives a right of action for wrongful death, and requires it to be brought by the executor or administrator of decedent within two years after decedent's death. Laws 1886, p. 801, c. 572, provides that no action against a city of 50,000 inhabitants or over for personal injuries resulting from negligence shall be maintained unless the same shall be commenced within one year after the cause of action